UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WILLIAM HENRY GRAY,<br>         Defendant. | Criminal No. 06-227-11 |

**DETENTION MEMORANDUM**

      The Defendant, William Henry Gray, also known as "Punchy", also known as "P", has been charged by indictment with conspiracy to distribute and possess with intent to distribute one kilogram or more of phencyclidine ("PCP"), a Schedule II controlled substance, in violation 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and § 841 (b)(1)(A)(iv); unlawful possession with intent to distribute and distribution of one kilogram or more of PCP, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv) and 18 U.S.C. § 2; unlawful distribution of one hundred grams or more of PCP in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv); and criminal forfeiture in violation of 21 U.S.C. § 853 and § 853(p). The Government requested a detention hearing, which was held on August 4, 2006. At the conclusion of the detention hearing, the Court found that the Defendant should be held without bond. This memorandum is submitted to comply with the statutory obligation that "the judicial

officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### Findings of Fact

At the detention hearing, the Government proffered that the Defendant was involved in a conspiracy to import and distribute gallons of PCP to the Washington, DC metropolitan area from approximately September 2005 through at least July 27, 2006. According to the government, Mr. Jackson and Mr. Hopkins, as leaders of the conspiracy, purchased gallons of PCP from Mr. Tony Fitzgerald Hilt, also known as "T." Mr. Hilt, a member of the L.A. based gang Mona Park Crips, sold PCP to Mr. Jackson, Mr. Hopkins, or to various other intermediaries of the conspiracy.[1]

Mr. Jackson and Mr. Hopkins imported the PCP from California to Washington, DC by enlisting female couriers to individually transport a gallon of PCP in their checked-in luggage from Long Beach, CA to Washington, DC.[2] The couriers and the conspirators[3] would fly from Dulles International Airport ("IAD") located in Dulles, VA, to Long Beach Airport ("LGB") located in Long Beach, CA by commercial airlines. The couriers included: Ms. Tinesha Denise Adams,[4] Ms.

---

[1] The sale transaction would occur at Mr. Hilt's home in Los Angeles, CA.

[2] After the trips were complete, Mr. Jackson and other conspirators paid the couriers for their flight, hotel and travel expenses with travelers checks, Western Union transfers, and money-grams. Many of the money grams were purchased from a Shopper's Food Warehouse grocery store, which Mr. Jackson frequents.

[3] The Government proffers that Mr. Jackson and Mr. Hopkins usually accompanied the couriers on their trips to and from California. However, at times the couriers were accompanied by other conspirators.

[4] Ms. Adams made 12 trips.

Shawntae Anderson,[5] and Ms. Lanika Mercedes Franklin.[6] After purchasing the PCP from Mr. Hilt, the conspirators, with the assistance of the couriers, would purchase shampoo, lotion, and Listerine bottles and empty the contents of the bottles to later fill them up with PCP. The couriers carried these bottles in their checked in luggage on their flight back from LGB to IAD.

The flight records indicate that the conspirators made about 25 flights between the Washington, DC area to Long Beach, CA from September 2005 through at least July 27, 2006.[7] Once the PCP was in the Washington, DC area, the conspirators would dilute the PCP with starter fluid and sell the diluted PCP to wholesalers and distributors. The conspirators would meet to sell the PCP and exchange money at various locations in Washington, DC and suburban Maryland, including Ms. Wanda Owens'[8] apartment, Mr. Hargrove's apartment, Mr. Hopkin's father's home, and the Safari Steakhouse.

The Defendant was a PCP wholesaler.[9] Authorities surveilled the Defendant on many occasions with Mr. Jackson after Mr. Jackson had received a "load" of PCP. From time to time, the

---

[5] Ms. Anderson made 11 trips.

[6] The exact number of trips that Ms. Franklin made is unknown, however she did travel numerous times.

[7] The flight records indicate that the conspirators used JetBlue, Southwest, and AmericaWest airlines. It is estimated that at least one gallon of PCP was carried back from Long Beach on each trip, which equals about 25 gallons of diluted PCP. One gallon of liquid PCP equals approximately 3.7 kilograms of the drug. The Government proffered that the actual amount of PCP imported actually exceeds the special allegation amount of 20 kilograms listed in the indictment. In a superceding indictment, the Government will allege the full amount.

[8] Ms. Wanda Owens is Mr. Jackson's sister.

[9] A Government cooperator, who was a customer of the Defendant, has confirmed that the Defendant is a PCP wholesaler.

Defendant and Mr. Jackson met at the Safari Steakhouse. On May 11, 2006, the Defendant was surveilled with Mr. Jackson exchanging an item.

In May, 2006, a wiretap was placed on Mr. Jackson's phone. Authorities heard Mr. Jackson and the Defendant discussing plane money for trips to and from California. On one occasion, the two spoke about "3 sodas" which the Government proffered are amounts consistent with PCP sales at the wholesale level. On a different occasion, the Defendant expresses exasperation when Mr. Jackson delayed their meeting. The Defendant asked Mr. Jackson to hurry because he was sitting on "dynomite," a coded reference to money. The Defendant and Mr. Jackson also spoke about the disputes between the Crips and the Bloods, two gangs.[10]

## Discussion

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person . . . [or] the safety of any other person and the community, such judicial officer shall order the detention of the [Defendant] before trial." 18 U.S.C. § 3142(e). Danger to the community alone is a sufficient basis upon which to order pretrial detention, if the judicial officer finds by clear and convincing evidence that Defendant's pretrial release would constitute an unreasonable risk of danger to the community. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). When, as here, there is probable cause to believe that

---

[10] Mr. Jackson was heard blaming the Crips for his difficulty in obtaining PCP.

a Defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed, a rebuttable presumption arises that the Defendant constitutes a danger to the community, and no pretrial release condition or combination of conditions may be imposed to assure his future presence in court or to reasonably assure the safety of the community.

Here, the government seeks pre-trial detention on the grounds that the Defendant poses a danger to the community and a risk of flight.  In determining whether there are conditions of release which will reasonably assure the safety of the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the Defendant's ties to the community; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the Defendant's release. *See* 18 U.S.C. §3142(g).

The first factor, the nature and circumstances of the offense, favors detention.  The Defendant is charged with conspiracy to distribute  massive amounts of PCP into the Washington, DC area.

The second factor, the weight of the evidence, also favors detention.  The Government surveilled the Defendant with Mr. Jackson, one of the lead conspirators.  The Government has oral evidence from a wiretap placed on the Defendant's phone in May 2006.  The Defendant was heard on the wiretap conversing in code about the PCP.  In addition, the Government has confirmed through a cooperator that the Defendant was a wholesaler.

The third factor, the history and characteristics of the Defendant, supports pretrial detention.

The wiretap evidence indicates that the Defendant is involved in the drug and gang scene. The Defendant was heard on wiretap in May talking in code about PCP transactions, the Bloods and the Crips, and drug money. The fourth factor, the nature and seriousness of the danger to the community should the Defendant be released, also favors detention. Although the instant charges did not involve violent activity, the Defendant was heavily involved in importing a massive amount of PCP, a dangerous and illegal substance that causes violence in the Washington, DC area.

### **Conclusion**

Based upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that the evidence clearly and convincingly establishes that the Defendant's pretrial release would constitute an unreasonable risk of danger to the community. The presumption in favor of detention establishes by the statute has not been overcome by the Defendant in this case. Therefore, the government's motion for pretrial detention is granted and the Defendant is to be held without bond pending further actions of this court.

Dated: August _21_, 2006                    _____/s/_____
                                            ALAN KAY
                                            UNITED STATES MAGISTRATE JUDGE